## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-33831 |
| | § | |
| BUILDER'S CHOICE, INC., | § | (CHAPTER 11) |
| | § | |
| DEBTOR | § | |

### EMERGENCY MOTION TO DISMISS CHAPTER 11 CASE

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**RELIEF IS REQUESTED BY JULY 3, 2025.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Builder's Choice, Inc. ("BCI"), acting through its authorized representatives, moves this Court to dismiss BCI's pending bankruptcy case, which was filed without proper authority, pursuant to 11 U.S.C §§ 105 and 1112(b) and Rules 1017, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure.  In support of this motion, BCI respectfully state as follows:

17306504

## BASIS FOR EMERGENCY CONSIDERATION

1.      The filing of this petition was a blatant violation of a pre-petition Temporary Restraining Order issued by a state court and obvious forum shopping.  The state court specifically enjoined Ivan Madrigal from filing a bankruptcy petition for BCI or taking any action on behalf of BCI.  Twenty minutes later, and with knowledge of the Temporary Restraining Order, Madrigal signed the petition under penalty of perjury and filed this case without corporate authority.

2.      Emergency relief is necessary because Madrigal is continuing to act in violation of the Temporary Restraining Order and using the unauthorized petition as cover.  Specifically, Madrigal contacted First Horizon Bank, which had removed Madrigal as a signatory on BCI's bank accounts based on the Temporary Restraining Order, and attempted to regain control over BCI's bank accounts claiming that his unauthorized petition controls over the Temporary Restraining Order.  Further Madrigal has attempted to use the automatic stay as a sword to gain access to BCI's offices and computer systems in violation of the Temporary Restraining Order.

3.      BCI requests emergency consideration of this Motion in order to stop the risks to BCI's assets and operations which are being caused by Madrigal's improper use of his unauthorized petition.  The Court need look no further than the plain language of the Temporary Restraining Order which enjoined Madrigal from signing the petition in order to dismiss this case.  Accordingly, BCI contends that emergency consideration of the Motion is necessary and appropriate today, July 3, 2025.

## PROCEDURAL BACKGROUND

4.      At 1:16 p.m. on July 2, 2025, the Honorable Lee Kathryn Shuchart of the 61st Judicial District Court of Harris County, Texas (the "State Court") entered a Temporary Restraining Order, a copy of which is attached hereto as Exhibit 1 (the "TRO").

17306504

5.      The TRO specifically restrained Ivan Madrigal from "[f]iling or attempting to file any petition for relief under the United States Bankruptcy Code any other present or future federal or state insolvency, bankruptcy or similar laws."  More broadly, the TRO also prohibited Madrigal from "[t]aking or attempting to take any actions on behalf of BCI" and "[e]xercising, waving, or attempting to exercise or waive, any of BCI's rights."

6.      At 1:36 p.m. on July 2, 2025, twenty minutes **_after_** entry of the TRO, Madrigal filed a bare bones voluntary chapter 11 petition in this Court which he signed as the alleged CEO of BCI. Notably, there were no resolutions attached to the petition.

7.      A temporary injunction hearing is scheduled in the State Court for July 11, 2025.

## FACTUAL BACKGROUND

**A.      BCI's Business is Governed by its Board of Directors Pursuant to a Shareholders Agreement and BCI's Bylaws**

8.      BCI and its shareholders executed new governance documents in conjunction with an April 2021 transaction in which Western Cabinets, Inc. ("Western") provided funds that allowed BCI to pay off a prior debt. [1]  Specifically, BCI and its shareholders entered into a Shareholders Agreement to govern the composition of BCI's Board of Directors.[2]  The Shareholders Agreement designates the size of the Board at seven (7) directors[3], provided specific

---

[1]     Ex. 4 (Consent of BCI's Directors in Lieu of Special Meeting dated April 30, 2021).  As part of this transaction, BCI entered into a Loan Agreement and associated "Loan Documents" providing a $3,925,200 secured loan to BCI, as well as a Stock Purchase Agreement pursuant to which Western purchased 100 shares of preferred stock entitled to 10% control for $800,000.  *See* Ex. 5 (Loan Agreement dated April 30, 2021 between Western, as lender, BCI, as borrower, and Mr. Madrigal, as guarantor); Ex. 6 (Stock Purchase Agreement dated April 30, 2021).  Ivan Madrigal LLC, as a BCI shareholder, additionally executed a Pledge and Security Agreement pursuant to which it pledged its shares of BCI stock as collateral for the Loan Agreement.  *See* Ex. 7 (Pledge and Security Agreement dated April 30, 2021).  Notably, Ivan Madrigal LLC agreed that Western may exercise any and all voting rights for the pledged shares of BCI stock upon the occurrence of any default under the Loan Agreement.  *Id*. at Section 9(e) and 10.

[2]     Ex. 8 (Shareholders Agreement dated April 30, 2021).

[3]     *Id*. at Section 1.1.

authority for appointment of the seven directors, and sets procedures for removal of directors and filling vacancies.

9.     The shareholders likewise adopted Amended and Restated Bylaws in April 2021 (the "Bylaws") to govern BCI's business.[4] Notably, consistent with Texas law, the Bylaws provide that "the business and affairs of [BCI] shall be controlled by the Board of Directors."[5] Moreover, the "Directors shall act only as a board, and an individual Director shall have no power as such."[6]

10.    BCI's Board of Directors as of June 2025 consisted of the following seven (7) individuals: Stanley Tidwell, Kenneth Graper, and Jaime Foster (appointed by Western pursuant to the Shareholders Agreement), and Ivan Madrigal, Ricardo Valencia, Michael Contreras, and Casey Houghton (appointed by Ivan Madrigal LLC pursuant to the Shareholders Agreement).

11.    BCI's officers as of June 2025 included Madrigal as the President and CEO, Anthony Yanni as the CFO, and Houghton as the Secretary.

**B.     BCI Terminated and Removed Madrigal in Accordance with BCI's Governance Documents**

12.    Because of multiple defaults under the Loan Agreement with Western caused by Madrigal, as well as unauthorized actions and improper bankruptcy threats, and recognizing the risk that his continued mismanagement posed to BCI's survival, BCI's Board of Directors removed Madrigal, Yanni, and Houghton as officers of the company as of July 1, 2025.

13.    Specifically, the required majority of shareholders executed a Consent of Shareholders in Lieu of Special Meeting (the "Shareholder Consent") that amended the Shareholders Agreement to remove the grant of authority to Madrigal over BCI's day-to-day

---

[4]     Ex. 9 (Amended and Restated Bylaws of BCI).
[5]     *Id*. at Section 3.1.
[6]     *Id*.

operations pending ratification by the Board of Directors.[7]  Utilizing the voting rights for the shares
pledged by Ivan Madrigal LLC, the Shareholders Consent also removed Madrigal and Houghton
from the Board of Directors and replaced them with Felix Suarez and Gina Moran.[8]

14.     BCI's Board of Directors also unanimously executed a written consent that, among
other things, terminated Madrigal's employment and ability to act on behalf of BCI[9]:

---

**BUILDER'S CHOICE, INC.**

**CONSENT OF DIRECTORS
IN LIEU OF SPECIAL MEETING**

**July 1, 2025**

---

RESOLVED, that, pursuant to the Bylaws of the Company, Ivan Madrigal is hereby removed from any and all director, officer, employee, agent, and representative roles for the Company.  This removal includes but is not limited to Ivan Madrigal's removal from the roles of Vice Chairman of the Board of Directors, President, and Chief Executive Officer.  Any prior authority granted by the Company to Ivan Madrigal, including but not limited to any authority to act on behalf of or otherwise bind the Company, is hereby revoked.

---

15.     As a result, Madrigal no longer has any right or authority to act on BCI's behalf.[10]

**C.     Madrigal's  Improper Conduct and Bankruptcy Petition on July 2, 2025**

16.     Written notice of BCI's termination and removal of Madrigal was provided to him
and Mr. Wawrzyn at 7:00 am on July 2, 2025.[11]  Upon receipt, Madrigal drove to BCI's
headquarters and attempted to enter the premises.  After onsite security did not allow Madrigal to
enter, Madrigal attempted to employ local law enforcement to force his way into the business.
Madrigal also contacted BCI employees and directed them to leave.

---

[7]      *See* Ex. 10 (Consent of Shareholders in Lieu of Special Meeting).
[8]      *Id*.
[9]      *See* Ex. 11 (Consent of Directors in Lieu of Special Meeting).
[10]     *Id*.
[11]     Ex. 12 (Letter to Messrs. Madrigal and Yanni dated July 2, 2025).

17306504

17.     Meanwhile, BCI filed an Original Petition and Application for Temporary Restraining Order in Harris County District Court against Madrigal and Yanni (the "State Court Petition") and provided notice to Madrigal, Yanni, and their attorney (Matthew Wawrzyn) at 9:53 am on July 2, 2025.[12]  Madrigal and Mr. Wawrzyn were likewise informed that BCI had requested an emergency hearing on its TRO request and that notice of the hearing would be provided as soon as possible.[13]  Then at 11:58 am, BCI provided notice to Madrigal and Wawrzyn that the Court would hear the TRO application at 1:00 pm.[14]

18.     The State Court issued the TRO against Madrigal at 1:16 pm on July 2, 2025 and BCI immediately paid the required $500 bond.[15]  The State Court found that Madrigal "committed various acts without authority, in violation of BCI's contractual commitments, and in breach of their fiduciary duties to BCI."  Specifically, the State Court found that Madrigal took out an unauthorized loan of $1.2 million, unilaterally increased his annual compensation, and used the Debtor's funds to pay for an apartment.

19.     The State Court further found that the BCI's Board of Directors terminated and removed Madrigal and Yanni from any and all director, officer, employee, agency and representative roles for BCI as of July 1, 2025, and, therefore, they "no longer have any right or authority to act on BCI's behalf."

20.     The TRO specifically restrained Madrigal from "[f]iling or attempting to file any petition for relief under the United States Bankruptcy Code any other present or future federal or state insolvency, bankruptcy or similar laws."  More broadly, the TRO also prohibited Madrigal

---

[12]     Ex. 13 (Email and letter to Messrs. Madrigal, Yanni, and Wawrzyn dated July 2, 2025).
[13]     *Id*.
[14]     Ex. 14 (Email and notice to Messrs. Madrigal, Yanni, and Wawrzyn dated July 2, 2025).
[15]     Ex. 1 (TRO and Bond Payment).

17306504

from "[t]aking or attempting to take any actions on behalf of BCI" and "[e]xercising, waving, or attempting to exercise or waive, any of BCI's rights."

21.    The TRO also prohibited Madrigal from accessing any of BCI's bank accounts.

22.    At 1:36 p.m. on July 2, 2025, twenty minutes **after** entry of the TRO, Madrigal filed a bare bones voluntary chapter 11 petition in this Court which he signed as the alleged CEO of BCI.  Notably, there are no resolutions attached to the petition

23.    In email correspondence after filing the petition, Mr. Wawrzyn specifically acknowledged that the TRO "was signed *before* the [bankruptcy] petition was filed . . ."[16]

24.    Since filing the bankruptcy, Madrigal has taken numerous actions aimed at interfering with BCI's business.  Upon information and belief, he once again attempted to access BCI's headquarters and argued to law enforcement that the bankruptcy filing granted him access. Upon information and belief, he also contacted BCI's bank, First Horizon Bank, and threatened them with sanctions from the bankruptcy court if the bank did not return his access and signatory authority over BCI's bank accounts.  First Horizon Bank temporarily lifted the freeze on Madrigal's access in response to these threats.

### RELIEF REQUESTED

25.    BCI hereby requests that the Court enter an order dismissing the pending case, with prejudice, because (i) Madrigal lacked requisite authority to commence the case on behalf of BCI, and (ii) the bankruptcy petition was not filed in good faith.

### BASIS FOR RELIEF

26.    Ivan Madrigal filed or caused to file, purportedly on behalf of BCI, the Bankruptcy Case because of an adverse ruling in the State Court and is attempting to use bankruptcy, without

---

[16]    Ex. 15 (Email correspondence from Mr. Wawrzyn dated July 2, 2025) (emphasis in original).

17306504

proper authority and without a valid bankruptcy purpose, and as a litigation tactic to gain an advantage in a two-party dispute, with the primary goal of continuing to frustrate BCI's ongoing business.

## A.     Lack of Corporate Authority is Cause for Dismissal

27.     Lack of authority to file a voluntary petition is cause for dismissal under section 1112(b)(1).  Indeed, as the Fifth Circuit makes clear, the Court has no choice to dismiss a case if corporate authority was lacking at the time of filing:

> If the petitioners lack authorization under state law, the bankruptcy court has no alternative but to dismiss the petition.  It is not enough that those who seek to speak for the corporation may have the right to obtain that authority.  Rather, they must have it at the time of filing.  Absent a duly authorized petition, the bankruptcy court has no power to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims.

*In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206–07 (5th Cir. 2018), *as revised* (June 14, 2018) (internal citations and quotation marks omitted) (quoting *Price v. Gurney*, 324 U.S. 100, 106, 65 S. Ct. 513, 516, 89 L. Ed. 776 (1945)); *In re All Saints Episcopal Church*, 638 B.R. 359, 374 (Bankr. N.D. Tex. 2021) ("If, as of the time of the bankruptcy filing, those purporting to have taken action on behalf of the corporation lacked authority under applicable state law to authorize the filing, then cause exists for dismissal of the case under section 1112(b)(1) of the Bankruptcy Code.").

28.     Because BCI is an entity created under state law, the Court must look to state law to determine the authority issue. *In re Franchise Servs.* 891 F.3d at 206; S*ee also Phillips v. First City, Texas–Tyler, N.A. (In re Phillips)*, 966 F.2d 926, 934 (5th Cir.1992)("Without further direction from Congress, we will continue to look to state law to determine which people have authority to seek federal bankruptcy protection on behalf of state-created business entities.").

29.     Applicable Texas law and BCI's governing documents vest the Board of Directors with the authority to exercise powers on behalf of the corporation and direct the management of the business and affairs of the corporation. *See* Tex. Bus. Org. Code § 21.401(a); *see also American Bank & Trust Co. v. Freeman*, 560 S.W.2d 444, 446 (Tex. App.—Beaumont 1977, writ ref'd n.r.e.) ("[N]o corporate power can be exercised by any one except the board of directors or by some officer or agent specially empowered by the board of directors to act in their name, place and stead. The president or vice president or one or more of the directors could not bind the corporation in the exercise of its corporate powers by virtue of the office or position held, but there must be action of the board of directors of the corporation either in performing the act or authorizing some one else to perform it.").  BCI's Bylaws expressly grant the Board of Directors, acting only as a board, the authority to govern BCI's business and affairs:

---

### ARTICLE III

### Directors

3.1     Powers.  The Directors shall act only as a board, and an individual Director shall have no power as such.  All corporate powers of the Corporation shall be exercised by, or under the authority of, and the business and affairs of the Corporation shall be controlled by the Board of Directors, subject, however, to such limitations as are imposed by law, the Certificate of Formation, or these Bylaws as to any actions to be authorized or approved by the shareholders or the Executive Committee.  The Board of Directors may, by contract or otherwise, give general or limited or special power and authority to the officers and employees of the Corporation to transact the general business, or any special business, of the Corporation, and may give powers of attorney to agents of the Corporation to transact any special business requiring such authorization.

---

30.     Accordingly, even if Madrigal remained as a Director of BCI (which he is not), he had no individual authority to initiate bankruptcy proceedings on BCI's behalf. *American Bank & Trust Co.*, 560 S.W.2d at 446; *see also In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 379 (Bankr. D. Or. 2003) (A "decision to file for bankruptcy protection is a decision outside the ordinary course of business, even for an entity in dissolution.").  .

31.     Moreover, ***Madrigal was not a Director or officer of BCI when he signed the petition***, and any and all authority previously granted to him by BCI was validly and fully revoked.[17]

32.     A Texas state court of competent jurisdiction utilizing state law specifically examined Madrigal's rights with regard to instituting bankruptcy proceedings and enjoined him from taking certain actions, like those he attempted to take in filing this bankruptcy.[18]  Plainly, Madrigal did not have authority to file this bankruptcy case and it must be dismissed.  Madrigal cannot now run to this Court to litigate the corporate governance issues which are already before the State Court.

33.     Addressing similar arguments, the Eight Circuit Court of Appeals found that a Bankruptcy Court must accept as valid the State Court's findings in its TRO regarding authority to act on a company's behalf:

> Oberlag raises a series of arguments contesting the TRO's validity.  However, the TRO was issued by a state court, so neither we nor the bankruptcy court has jurisdiction to decide the validity of the TRO; the order's validity or invalidity is a matter for the state courts to decide, and we must accept it as valid unless and until an appropriate state tribunal indicates we should do otherwise.  Accordingly, because the authority to file for bankruptcy on a corporation's behalf derives from state law, and because the TRO represents state law that limited Oberlag's powers and expanded the Keenihan's rights, we conclude Oberlag lacked the authority to file bankruptcy petitions on Heritage's behalf.

---

[17]     Ex. 14 (Shareholder Consent); Ex. 15 (Director Consent)
[18]     TRO

17306504

*Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1259 (8th Cir. 1994). Courts within the Fifth Circuit have similarly dismissed bankruptcy actions filed in the midst of an ongoing ownership dispute in state court. *See In re Marino*, 2010 Bankr. LEXIS 401, at *13 (Bankr. S.D. Tex. 2010) ("In light of the filing of the bankruptcy petitions to gain an unfair advantage in the litigation, the absence of any clear need for financial reorganization, and the conflicting claims asserted in the Harris County suit as to the ownership, management, and control of the Corporations, which assertions can be dealt with in that pending litigation, the court concludes, on the totality of the circumstances, that the above captioned Chapter 11 cases should be dismissed.").

34.     To the extent Madrigal contests the validity of the TRO and State Court's findings that he has no authority to act on BCI's behalf, he has a time and place to do exactly that—at the preliminary injunction hearing set for July 11, 2025 at 10:00 am in the State Court. This Court should accordingly dismiss Madrigal's bankruptcy petition.

**B.      Lack of Good Faith is Cause for Dismissal**

35.     While lack of good faith is not expressly enumerated in section 1112(b)(4), the Fifth Circuit is unequivocal that "[l]ack of good faith in the filing of a Chapter 11 bankruptcy petition constitutes cause for dismissal under 11 U.S.C. § 1112(b)." *Matter of Elmwood Dev. Co.*, 964 F.2d 508, 510 (5th Cir. 1992).

36.     The Fifth Circuit emphasizes "[t]he good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws." *Elmwood Dev.*, 964 F.2d at 510. "[G]ood faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose." *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000) (quoting *In re Metropolitan*

17306504

*Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970)). Importantly, because bankruptcy provides debtors with "powerful equitable weapons," the Fifth Circuit recognizes the critical gatekeeping function that the good faith standard serves to protect the "jurisdictional integrity of the bankruptcy courts" by limiting its access only to those debtors and creditors "with clean hands." *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

37.     As courts of equity, bankruptcy courts are "enabled to frustrate fraud and work complete justice." *Pipkins-Thomas v. United States*, 223 Fed. Appx. 310, 313 (5th Cir. 2007) (quoting *Tex. Co. v. Miller*, 165 F.2d 111, 116 (5th Cir. 1947)). To safeguard and prevent abuse, they are empowered with a variety of tools, including Section 105(a)'s broad statutory power and expansive authority to dismiss an action *sua sponte* when filed in bad faith. *See In re Art Midwest*, Inc., No. 04-91225-RFN-11, 2006 WL 306894, at *3 (Bankr. N.D. Tex. Jan. 5, 2006) (noting the Fifth Circuit in Little Creek "instructed bankruptcy courts to be vigilant for those cases where the rehabilitative purposes of chapter 11 will not be served," in such cases courts are duty bound to dismiss, and holding that even if the parties seeking dismissal had no standing, the court, pursuant to section 105(a) may sua sponte dismiss a bankruptcy case filed in bad faith.") (citation omitted).

38.     Courts evaluate the "totality of the circumstances" to determine whether a debtor demonstrates the requisite good faith to access the privileges and equitable powers of bankruptcy. *See, e.g. Cedar Shore*, 235 F.3d at 379 (citing *Little Creek*, 779 F.2d at 1072). The Fifth Circuit instructs bankruptcy courts on how to analyze the facts and circumstances to properly exercise its equitable powers and discretion to protect the bankruptcy system from a debtor's abuse:

> The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case.

*Elmwood Dev.*, 964 F.2d at 510. Courts make this evaluation by looking objectively at the primary purposes of a debtor's filing to determine whether it met the requirements of a good faith standard. *See Elmwood Dev.*, 964 F.2d 508, 512 (5th Cir. 1992) ("Because the good faith standard is an objective one, the court was not constrained to entertain and give dispositive weight to testimony as to the subjective state of mind of Elmwood's manager."). Stated differently, "a Chapter 11 petition is not filed in good faith unless it serves a valid bankruptcy purpose." *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 270 (Bankr. N.D. Tex. 2021) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999)).

39.     Madrigal filed this petition with knowledge of the TRO explicitly prohibiting him from filing this bankruptcy case.  Such a knowing and willful violation of a state court order is indicative of bad faith.

**C.     The bankruptcy case was filed to obtain a litigation advantage.**

40.     Dismissal of a bankruptcy petition for lack of good faith is warranted where "the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage" in litigation. *In re Antelope Techs., Inc.*, 431 Fed. Appx. 272, 275 (5th Cir. 2011) (affirming dismissal of petition that was "filed to gain an advantage in . . . shareholder litigation rather than for reorganization"). While "[m]erely obtaining a litigation advantage by pursuing bankruptcy is not dispositive of bad faith, . . . when a bankruptcy court finds a party pursues bankruptcy for the purpose of securing litigation advantage in another forum, such intent is dispositive: it establishes bad faith and necessitates dismissal." *Investors Group, LLC v. Pottorff*, 518 B.R. 380, 384 (N.D. Tex. 2014) (internal quotation marks and citation omitted).

41.     In *In re Kickapoo Kennels, LLC*, the Southern District of Texas dismissed a bad faith filing, where the debtor operated profitably pre- and post-petition because "[t]here was no financial need" to file the Chapter 11 bankruptcy other than to gain unfair advantage in litigation.

- 13 -

*See* No. 12-39321-H3-11, 2013 Bankr. LEXIS 2499, at *4 (Bankr. S.D. Tex. Jun. 19, 2013). Indeed, "[s]everal courts have dismissed bankruptcy cases based on the fact that the debtor, in filing a chapter 11 petition, was attempting to gain unfair advantage" in existing litigation. *See In re Leslie*, 1999 Bankr. LEXIS 2113, at *4 (Bankr. S.D. Tex. Feb. 11, 1999) (citing array of cases). *In Leslie*, the court dismissed the Chapter 11 petition, finding that the debtor filed bankruptcy to gain an unfair advantage in litigation. *See id*. at *5.

42.     The relevant overarching inquiry is whether the bankruptcy filing serves any valid purpose or presents any potential benefit to the creditors.  *Id*; *Nat'l Rifle Ass'n of Am.*, 628 B.R. at 270.  Bankruptcy is intended to serve the best interests of a debtor's creditors, not the debtor itself. That is why section 1112(b) requires courts to dismiss a debtor's case if doing so "is in the best interests of *creditors* and the estate."  *See* 11 U.S.C. § 1112(b) (emphasis added).

43.     As noted above, the State Court is scheduled to hear BCI's request for a temporary injunction against Madrigal next week on July 11, 2025.  Rather than contest that hearing in State Court, Madrigal has attempted to forum shop his dispute to this Court.  This case was only filed as a litigation tactic by Madrigal and for purposes of attempting to evade the jurisdiction of the State Court.

## CONCLUSION

44.     This case was filed without authority because Madrigal was subject to the TRO specifically enjoining him from filing a bankruptcy case or taking any other action on behalf of BCI.  This Court cannot review the validity of the TRO issued by the State Court.  The totality of the circumstances also evince that Madrigal filed this case in bad faith and for purposes of forum shopping.  Accordingly, this Court should dismiss this case immediately.

17306504

WHEREFORE, for the foregoing reasons, BCI respectfully requests that the Court grant this Motion and enter an order dismissing this Bankruptcy Case, and that the Court grant such other and further relief to as it deems just and proper.

Dated: July 3, 2025

Respectfully submitted,

*/s/ Joshua W. Wolfshohl*
**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
1000 Main St., 36th Floor
Houston, TX 77002
Tel: (713) 226-6000
Fax: (713) 226-6248
jwolfshohl@porterhedges.com
apower@porterhedges.com

and

John Zavitsanos
State Bar No. 22251650
jzavitsanos@azalaw.com
Nicholas Petree
State Bar No. 24083657
npetree@azalaw.com
Colin Phillips
State Bar No. 24105937
cphillips@azalaw.com
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney St., Suite 2500
Houston, Texas 77010
Telephone: 713-600-4904
Facsimile: 713-655-0062

17306504

and

Wade R. Quinn
State Bar No. 16433600
wquinn@macdonalddevin.com
**MACDONALD DEVIN MADDEN KENEFICK &
HARRIS, PC**
777 Post Oak Blvd., Suite 700
Houston, Texas 77056
Telephone: 713-570-9000

**ATTORNEYS FOR
BUILDER'S CHOICE, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on this the 3rd day of July, 2025, and by email to Trent Stephens – Trent.Stephens@fisherbroyles.com.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

## CERTIFICATE OF ACCURACY

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information and belief.  This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Nicholas Petree*
Nicholas Petree

17306504